**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1606
_____

UNITED STATES OF AMERICA; STATE OF CALIFORNIA; STATE OF GEORGIA;
STATE OF INDIANA; STATE OF MINNESOTA; STATE OF MISSOURI; STATE OF
NEW JERSEY; STATE OF NORTH CAROLINA; STATE OF TENNESSEE; STATE OF
WISCONSIN; COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF
VIRGINIA EX REL.; PHILLIP HUNTER

v.

FILLMORE CAPITAL PARTNERS, LLC; FILLMORE STRATEGIC MANAGEMENT,
LLC; FILLMORE STRATEGIC INVESTORS, LLC; DRUMM INVESTORS, LLC;
GGNSC HOLDINGS, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC;
GGNSC EQUITY HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC;
GGNSC CLINICAL SERVICES, LLC; BEVERLY ENTERPRISES, INC.; BEVERLY
HEALTH AND REHABILITATION SERVICES, INC.

Phillip Hunter,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-02134)
District Judge:  Honorable Chad F. Kenney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 5, 2024


BEFORE: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed:  April 1, 2025)

_____

OPINION[*]

_____

RENDELL, *Circuit Judge*.

Appellees Fillmore Capital Partners LLC and its affiliates (collectively "Golden Living") operate nursing homes across the United States. Appellant Phillip Hunter brought this qui tam action alleging that Golden Living engaged in fraud and violated the False Claims Act ("FCA") and various state laws by submitting inflated claims for payment to Medicare and Medicaid. The District Court granted Golden Living's motion to dismiss Hunter's complaint, concluding that he failed to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b) and failed to allege a prima facie case under the FCA. We agree and will affirm.

I.

Golden Living operates 273 nursing homes across the country, including Golden Living-Riverchase in Birmingham, Alabama. Hunter, a registered nurse, worked at this facility as a weekend supervisor and weekday treatment nurse from December 2006 until he resigned in February 2007. Hunter claims that, in his two months at the nursing home, he learned that Golden Living engaged in a years-long scheme to overbill Medicare and Medicaid at each of its facilities. This alleged scheme involved Golden Living intentionally admitting high-acuity residents who required more intensive care while

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

simultaneously understaffing the facilities.  Although Golden Living billed Medicare and

Medicaid for providing care to these high-acuity residents, Hunter alleges that Golden

Living could not and, thus, did not provide adequate care to the residents.  This, he

alleges, rendered Golden Living's requests for payment fraudulent under the FCA and

state law.

In 2015, Hunter filed a sealed Complaint against eleven entities alleging violations

of the FCA.[1]  From 2015 to July 2023, the United States filed over a dozen motions to

continue to seal the Complaint while it investigated Hunter's claims.  The United States

ultimately declined to intervene.  Hunter then filed an Amended Complaint asserting five

counts for violations of the federal FCA and twenty-three counts for state law violations.

Later, the Amended Complaint was unsealed.

Golden Living filed a motion to dismiss the Amended Complaint and the District

Court granted it.  In opposing the motion to dismiss, Hunter principally relied on three

categories of allegations to support his prima facie case under the FCA.  First, Hunter

cited reports that he commissioned from "workload experts, database experts, computer

simulation experts, and industrial engineers."  J.A. 117 (footnote omitted).  These reports,

he urged, showed that Golden Living's submissions to Medicare and Medicaid for

payments were fraudulent because they included material misrepresentations that were

based on "mathematical[] and human[] impossib[ilities]."  *Id.*  Second, Hunter relied

upon affidavits from two nurses employed at other Golden Living facilities describing

---

[1]Golden Living disputes that it controls or operates all eleven named entities.  Because we will affirm the District Court's order, we need not resolve this dispute.

understaffing and purported overbilling. Third, Hunter cited his personal experience at Golden Living's Birmingham facility, as well as his letter of resignation, in which he described an "[i]nadequate number of staff" and inability to treat residents adequately as reasons for his resignation. J.A. 63.

The District Court found these allegations insufficient to meet his burden of pleading a prima facie case of fraud under Federal Rule of Civil Procedure 9(b) and further concluded that because Hunter failed to state an FCA claim under Federal Rule of Civil Procedure 12(b)(6), it would not "exercise supplemental jurisdiction over Plaintiff's state law claims." *United States ex rel. Hunter v. Fillmore Cap. Partners, LLC*, No. 15-2134, 2024 WL 1051971, at *10 (E.D. Pa. Mar. 11, 2024). Hunter appealed.

## II.[2]

On appeal, Hunter essentially advances two arguments in favor of reversal: (1) the District Court erroneously imposed a higher pleading standard than required under Federal Rule of Civil Procedure 9(b), and (2) the District Court failed to accept the allegations in the Amended Complaint as true and draw all reasonable inferences in his favor as required under Federal Rule of Civil Procedure 12(b)(6). We reject both arguments.

---

[2]The District Court had jurisdiction under 28 U.S.C §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of a motion to dismiss de novo. *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010).

4

A.

Hunter first urges that the District Court erred in finding his allegations insufficiently particular under Federal Rule of Civil Procedure 9(b). An FCA plaintiff must comply with Federal Rule of Civil Procedure 9(b) and plead his fraud claims with particularity. *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 n.9 (3d Cir. 2004) (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)). To meet the pleading standard of Federal Rule of Civil Procedure 9(b), the plaintiff must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a *strong* inference that claims were actually submitted." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (emphasis added) (citations and internal quotation marks omitted). While a plaintiff need not produce "representative samples" of the alleged fraudulent conduct, *id.* at 156, he must allege the "who, what, when, where, and how" of the fraudulent scheme, *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citation and internal quotation marks omitted). However, "an inference of illegality based on facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden, because . . . *the possibility of a legitimate explanation undermines the strength of the inference of illegality*." *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) (emphasis added) (citing *Foglia*, 754 F.3d at 158).

The District Court concluded that while Hunter "satisfied the first element of the *Foglia* test by making allegations of a scheme, . . . he . . . failed to satisfy the second

element [in that] he ha[d] not alleged 'reliable indicia' of fraud that lead to a 'strong inference that claims were actually submitted.'" *Hunter*, 2024 WL 1051971, at *5 (quoting *Foglia*, 754 F.3d at 156). In reaching this conclusion, the District Court carefully considered the allegations Hunter cited as "reliable indicia of fraud." *Id.* It determined that these allegations were too "vague," otherwise "insufficient to provide reliable indicia of fraud," *id.*, or in some cases, entirely inconsistent with Hunter's claim of fraud. We agree.

Hunter urges, as he did in opposing the motion to dismiss below, that his experts' reports, which were submitted with his pleadings, constitute "mathematical evidence of the knowing and deliberate execution of fraud." Appellant Br. 25. This, he further claims, supports a strong inference of fraud. But the District Court correctly considered these reports and concluded that even if it "accept[ed] the experts' conclusions at face value," the reports "provide[] no more than [proof of a] 'mere opportunity for fraud.'" *Hunter*, 2024 WL 1051971, at *6 (quoting *United States ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 517 (E.D. Pa. 2015)). That is, while the reports may support the proposition that "there were not sufficient employees to perform all the necessary work" for the given number of residents, this only supports that it was possible for Golden Living to commit fraud, not that it was probable. *Id.* As the District Court noted, Hunter did not allege that "he provided his experts with *the claims actually billed* at all 273 facilities in question." *Id.* The existence of "the very real 'possibility of [the] legitimate explanation' that [Golden Living] pushed their employees hard and only billed for work performed 'undermines the strength of the inference of illegality.'" *Id.* (quoting

6

*Omnicare*, 903 F.3d 78, 92 (3d Cir. 2018)). Indeed, as the District Court recognized, Golden Living has a financial incentive in minimizing, to the extent permitted by law and regulation, staffing and overhead costs to maximize its profits. Thus, the existence of a legitimate business explanation for Golden Living's low staffing decision militates against any "strong inference" of fraud in this case as required by *Foglia*.

Hunter's allegations regarding his personal experience and references to his resignation letter also do not suffice as reliable indicia of fraud. The District Court astutely recognized that, his personal experience "working at a Golden Living facility," contrary to his urging, highlighted "his failure to allege reliable indicia of fraud." *Id*. at *5. Hunter's allegation that "he performed more work than he was supposed to and stayed late on multiple occasions," *id.*, supports the opposite inference that despite Golden Living's high number of high acuity residents, Golden Living provided appropriate services, though at a high cost to staff morale. *See also* J.A. 63 (alleging that Hunter "stay[ed] late" to ensure appropriate treatment was provided to his residents). As the District Court further observed "[o]verwork alone does not equate to false claims *being submitted*." *Hunter*, 2024 WL 1051971, at *5 (emphasis added). And other allegations based on his experience were too vague. The District Court concluded, and we agree, that Hunter's personal complaints "amount[ed] to generalized concerns about improper documentation made to unidentified administrators . . . at unspecified times, and . . . vague complaints that the care services provided to residents . . . were not consistent with accepted standards of medical practice." *Hunter*, 2024 WL 1051971, at *5 (citations and quotation marks omitted).

7

Finally, two affidavits that Hunter submitted as part of his Amended Complaint fail to support his claims. Both affidavits provide cumulative allegations of understaffing and inadequate patient care. However, as the District Court explained, inadequate care is insufficient to sustain a worthless services claim under the FCA. Furthermore, neither affidavit describes the affiants' personal experiences or knowledge of submitting false claims as a part of a larger scheme. While Hunter emphasizes that one affiant explained that "documentation was routinely filled in with nothing but guesswork or false entries to comply with the paperwork demands by management," this allegation is too vague. J.A. 121. The affiant did not identify examples of false claims, what forms were used to falsify the claims, or the specific residential locations implicated by these false claims. Although relators need not "identify a specific claim for payment" to allege a FCA violation, *Foglia*, 754 F.3d at 156, Foglia's second element requires a greater degree of factual detail than these affidavits provide.

In short, we agree with the District Court that the allegations Hunter has set forth in his Amended Complaint are not "reliable indicia" of fraud sufficient to support a "strong inference that claims were actually submitted." *Id.* (quoting *Grubbs*, 565 F.3d at 190) (internal quotation marks omitted).

B.

Next, Hunter contends the District Court erred in dismissing Hunter's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss, we accept as true a complaint's factual allegations and view them in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224,

8

233 (3d Cir. 2008). We must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputably authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To establish a prima facie case under the FCA, a relator must show "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Zimmer*, 386 F.3d at 242 (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001)). To satisfy the falsity element, a claim can be factually or legally false. Factually false claims "misrepresent[] what goods or services that [the claimant] allegedly provided to the government." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011), *overruled on other grounds by*, *Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016). Legally false claims involve a claimant who "knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id.* Knowledge is defined as "actual knowledge," "deliberate indifference of the truth or falsity of the information," or "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

The District Court concluded that Hunter failed to state a prima facie FCA claim because he did not allege facts to support either factual or legal falsity under either false claims theory. We agree.

9

1.

First, Hunter's Amended Complaint fails to allege factual falsity on an "inflated claims" theory, *see Hunter*, 2024 WL 1051971, at *7-8, or "worthless services" theory, *see id.* at *8-9. As the District Court concluded that Hunter failed to meet his standard of pleading fraud with particularity under Federal Rule of Civil Procedure 9(b), it easily concluded that Hunter also failed to plead facts to support either theory of factual falsity. While the District Court recognized that Hunter made "substantial allegations of understaffing . . . . [, he failed] to take the next step and allege that [Golden Living] *submitted false claims*." *Id.* at *7 (emphasis added). Instead, Hunter merely "revert[ed] to the same conclusory formulas that simply restate the element of falsity." *Id.* at *8. In essence, the "allegations [we]re [insufficient] . . . pleadings on information and belief." *Id.* (concluding that "[Hunter's] vague allegations of mistreatment of patients are not specific enough to allege falsity under Rule 9(b).").

2.

Hunter's Amended Complaint also fails to allege either legal falsity or implied legal falsity. Express false certifications occur when a claimant "falsely certif[ies] that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *Wilkins*, 659 F.3d at 305. Implied false certifications "attach[] when a claimant seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." *Id.*

First, Hunter fails to allege express false certification because he has failed to allege factual falsity. Although he urges that he has sufficiently plead legal falsity by alleging "a clear picture of the circumstances that constitute the falsity of the claims [Golden Living] submitted," as the District Court wrote, his failure to allege factual falsity also dooms his claim of express legal falsity. Appellant Br. 39. Hunter does not allege who submitted fraudulent claims, what the fraudulent claims said, specific locations where the fraudulent claims occurred, or which patients were impacted by the fraudulent claims. *See Moore*, 812 F.3d at 307.

Second, Hunter fails to allege implied false certification because he likewise made generalized and conclusory claims that Defendants "violated . . . existing regulations by failing to comply with the staffing regulations." *Hunter*, 2024 WL 1051971, at *10. The District Court concluded in the alternative, and we agree, that "[e]ven if false certifications were made, [Hunter] ha[d] not sufficiently alleged that those certifications were material" to the government's decision to pay the claims. *Id.* Instead, Hunter relied on "boilerplate language" to support his claims without explaining whether violations of the language had any impact on the government's payment decision. *Id.*

Because Hunter has failed to allege the falsity element of an FCA claim, the allegations of his Amended Complaint are insufficient to survive a Rule 12(b)(6) motion.

## III.

For these reasons, we will affirm the order of the District Court.